```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____
```

ANGELIQUE H. CORNELL,

                              Plaintiff,

v.                                                       7:11-CV-1064
                                                                (GTS)
MICHAEL J. ASTRUE, Comm'r of Soc. Sec.,

                              Defendant.
```
_____
```

APPEARANCES:                                                   OF COUNSEL:

OLINSKY LAW GROUP                                KAREN S. SOUTHWICK, ESQ.
 Counsel for Plaintiff
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.               NOAH M. SCHABACKER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

       Currently before the Court, in this Social Security action filed by Angelique H. Cornell ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings, as well as Plaintiff's supplemental briefing. (Dkt. Nos. 14, 15, 19.) For the reasons set forth below, Defendant's motion is granted in part and denied in part, and Plaintiff's motion is granted in part and denied in part.

I.     RELEVANT BACKGROUND

   A.     **Factual Background**

Plaintiff was born on April 28, 1987. She has a high school education. During her life, Plaintiff has worked as a phone book bagger and a care giver in an animal hospital. Generally, Plaintiff's alleged disability consists of anxiety, panic attacks, depression and bipolar disorder. Her alleged disability onset date is December 4, 2007.

   B.     **Procedural History**

On December 4, 2007, Plaintiff applied for Supplemental Security Income. Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On April 22, 2010, Plaintiff appeared before the ALJ, Aaron M. Morgan. (T. 22-51.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on May 27, 2010. (T. 6-21.) On July 12, 2011, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.     **The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 11-16.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. (T. 11.) Second, the ALJ found that Plaintiff's anxiety disorder is a severe impairment. (*Id.*) Third, the ALJ found that Plaintiff's impairment does not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 11-12.) The ALJ considered listing 12.06. (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff is limited to

jobs involving simple, routine repetitive tasks with up to three-step commands. In addition, Plaintiff is limited to jobs involving occasional changes in the work setting and judgment or decision-making; no interaction with the general public and coworkers; and isolated with only occasional supervision. (T. 12-15.) Fifth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 15-16.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes five separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred by failing to follow the treating physician rule. (Dkt. No. 14 at 8-12 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in finding that Plaintiff's impairment does not meet Listing 12.06. (*Id.* at 12-14.) Third, Plaintiff argues that the ALJ's RFC assessment is unsupported by substantial evidence and is the product of legal error because (a) the ALJ failed to reconcile all of the limitations established by the State agency reviewing physicians and (b) the ALJ failed to apply the Psychiatric Review Technique. (*Id.* at 14-17.) Fourth, Plaintiff argues that the ALJ failed to apply the appropriate legal standards in assessing Plaintiff's and a third party's credibility. (*Id.* at 17-23.) Fifth, and finally, Plaintiff argues that the ALJ's determination at step five is unsupported by substantial evidence and is the product of legal error. (*Id.* at 23-24.)

### B. Defendant's Arguments

In response, Defendant makes five arguments. First, Defendant argues that the ALJ properly evaluated the medical evidence. (Dkt. No. 15 at 8-11 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly determined that Plaintiff's impairment did not meet Listing 12.06. (*Id.* at 11-13.) Third, Defendant argues that the ALJ properly assessed Plaintiff's

3

RFC. (*Id.* at 13-15.) Fourth, Defendant argues that the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 15-17.) Fifth, and finally, Defendant argues that Plaintiff can perform work in the national economy. (*Id.* at 18.)

### C. Plaintiff's Supplemental Arguments

Plaintiff makes three separate arguments in further support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ failed to follow the treating physician rule. (Dkt. No. 19 at 1-3 [Pl.'s Reply Mem. of Law].) Second, Plaintiff argues that the ALJ erred in finding that her impairment does not meet Listing 12.06. (*Id.* at 3-4.) Third, and finally, Plaintiff argues that the ALJ did not properly evaluate Plaintiff's credibility. (*Id.* at 4-5.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations. If the
> claimant has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age, education,
> and work experience; the [Commissioner] presumes that a claimant who is
> afflicted with a "listed" impairment is unable to perform substantial
> gainful activity. Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform his past
> work. Finally, if the claimant is unable to perform his past work, the
> [Commissioner] then determines whether there is other work which the
> claimant could perform. Under the cases previously discussed, the
> claimant bears the burden of the proof as to the first four steps, while the
> [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Erred in Failing to Follow the Treating Physician Rule

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 8-11 [Def.'s Mem. of Law].) The Court would only add the following analysis.

Under the "treating physician's rule," an ALJ must give controlling weight to the treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, No. 11-2907, 2012 WL 2096630, at *1 (2d Cir. June 12, 2012). The factors an ALJ should consider when determining the proper weight of a treating physician's opinion include the following: (1)

6

frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(d); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). Regulations require ALJs to set forth their reasons for the weight they assign to a treating physician's opinion. *Shaw*, 221 F.3d at 134.

Plaintiff argues that the ALJ failed to properly weigh the opinion of her treating physician, Dr. Kirti Kalidas, M.D., by considering all of the aforementioned factors. Specifically, Plaintiff points out that the ALJ failed to acknowledge the length of her treatment by Dr. Kalidas or that his opinion was based on direct examination. Further, Plaintiff argues that the ALJ erred in failing to consider the consistency of Dr. Kalidas's opinion with the opinions of State agency psychologists, Dr. Weber and Dr. Adams.

To be sure, the ALJ did not specifically mention the length of Plaintiff's treatment by Dr. Kalidas. However, the ALJ did note that Dr. Kalidas's specialty is internal and naturopathic medicine. Moreover, Plaintiff's argument that the ALJ failed to consider the consistency between the opinion of Dr. Kalidas and the opinions of Dr. Weber and Dr. Adams is belied by the Mental RFC Assessments completed by each of these doctors.

The Court's review of Dr. Kalidas's treatment records reflects that he met with Plaintiff a total of seven times between December 2006 and July 2008.[1] Further, while Dr. Kalidas noted Plaintiff's reports of anxiety and/or panic attacks throughout this period, his treatment notes are sparse and not in narrative form. Moreover, many of Dr. Kalidas's conclusions recorded in his

---

[1] The ALJ properly noted that according to Plaintiff's testimony, she stopped treatment with Dr. Kalidas because he did not accept insurance and she could no longer afford to pay him. (T. 42.)

7

December 19, 2007 Mental RFC Assessment and his April 9, 2008 Mental Health Report are not supported by his own treatment notes.[2]

While Plaintiff identifies some consistencies between the opinions of Dr. Kalidas and the opinions of Dr. Weber and Dr. Adams, a review of Dr. Kalidas's Mental RFC Assessment reveals that it is overwhelmingly inconsistent with the assessments of Dr. Weber and Dr. Adams. For example, Dr. Kalidas found that Plaintiff is moderately limited in the ability to understand and remember very short and simple instructions, while Dr. Weber and Dr. Adams each found that Plaintiff is not significantly limited in that area. Also, Dr. Kalidas found that Plaintiff is markedly limited in the ability to understand and remember detailed instructions, while Dr. Weber and Dr. Adams each found that Plaintiff is only moderately limited in that area. In addition, Dr. Kalidas found that Plaintiff is markedly limited in the ability to maintain attention and concentration for extended periods, while Dr. Weber and Dr. Adams found that Plaintiff is only moderately limited in that area. Further, Dr. Kalidas found that Plaintiff is markedly limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances as well as in the ability to sustain an ordinary routine without special supervision, while Dr. Weber and Dr. Adams each found that Plaintiff is not significantly limited in either of those areas. (T. 200, 210, 259.)

---

[2] For example, within the first four months of treating Plaintiff, Dr. Kalidas noted that Plaintiff was "overall better" and "overall less shaky" and only "mildly anxious" while taking Klonopin. (T. 253-258.) At one point, although Dr. Kalidas noted that Plaintiff reported having an "attack" while at the grocery store within the previous week, he also noted that her anxiety was "less pronounced" despite Plaintiff having stopped her medication because she ran out. (T. 247-248.) In contrast, Dr. Kalidas subsequently reported that Plaintiff had a "[g]eneralized persistent anxiety" and "[r]ecurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week." (T. 204.)

Here, the ALJ cites other record evidence that is inconsistent with Dr. Kalidas's opinion, including that of Dr. Weber and Dr. Adams. In addition, the Court's review of the record reveals that Dr. Kalidas's opinions are inconsistent with his own treatment records. Therefore, the ALJ's failure to specifically acknowledge the length of Plaintiff's treatment by Dr. Kalidas is harmless error.

> The ALJ [i]s not required to mention or discuss every single piece of evidence in the record. Where the evidence of record permits the court to glean the rationale of an ALJ's decision, the ALJ is not required to explain why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. Moreover, although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and his failure to cite specific evidence does not indicate that it was not considered.

*Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78-9 (N.D.N.Y. 2005) (citations and quotations omitted). Here, as in *Barringer*, the ALJ's decision references all of the medical sources of record, and is based on substantial evidence. *See Barringer*, 358 F. Supp. 2d, at 79. Where, as here, the treating physician's opinion is not supported by, or consistent with, other evidence in the record, the ALJ is entitled to accord that opinion less than controlling weight, and may instead rely on the opinions of consultative examiners. *See Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 [2d Cir. 2004], and *Mongeur v. Heckler*, 722 F.2d 1033, 1039 [2d Cir. 1983]). Accordingly, the ALJ's decision to assign less than controlling weight to the opinion of Dr. Kalidas is supported by substantial evidence and is affirmed.

**B. Whether the ALJ Erred in Failing to Find that Plaintiff's Impairment Meets or Medically Equals Listing 12.06**

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 11-13 [Def.'s Mem. of Law].) The Court would only add the following analysis.

A plaintiff will meet or equal Listing 12.06 where the following two prongs are met:

> A. Medically documented findings of at least one of the following:
>
> 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
>
> a. Motor tension; or
>
> b. Autonomic hyperactivity; or
>
> c. Apprehensive expectation; or
>
> d. Vigilance and scanning;
>
> or
>
> 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
>
> 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
>
> 4. Recurrent obsessions or compulsions which are a source of marked distress; or
>
> 5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
>
> AND
>
> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.

In support of his decision that Plaintiff's impairment does not meet or equal Listing 12.06, the ALJ found that Plaintiff does not meet the requirements of Part B of that Listing. Specifically, the ALJ concluded that Plaintiff has mild restrictions in her activities of daily living; marked difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation, which have been of extended duration. (T. 11-12.)

Plaintiff argues that the ALJ erred in failing to find that Plaintiff's impairment met or equaled Listing 12.06 because, in accordance with the opinion of Dr. Kalidas, Plaintiff had marked restriction in her activities of daily living; marked difficulties in maintaining concentration, persistence or pace; and three repeated episodes of decompensation, each of extended duration, "which he noted were recurrent multiple panic attacks." (Pl.'s Mem. of Law, at 14.) Because (again) the ALJ did not err in failing to give Dr. Kalidas's opinion controlling weight, his decision that Plaintiff's impairment did not meet or equal Listing 12.06 was not error.[3] The ALJ relied on the opinions of Dr. Weber and Dr. Adams as well as the reports of Plaintiff and her third-party contact. Dr. Weber and Dr. Adams each opined that Plaintiff is only mildly restricted in activities of daily living and has only moderate difficulties in maintaining concentration, persistence or pace. (T. 224, 273.) Also, Dr. Weber and Dr. Adams each concluded that Plaintiff has had no episodes of decompensation of extended duration. (*Id.*) Finally, although Dr. Weber and Dr. Adams each found that Plaintiff has only moderate difficulties in maintaining social functioning, the ALJ concluded, based on the reports of Plaintiff and her third-party contact, that Plaintiff is markedly limited in that area. (T. 12.)

---

[3] Another example of the internal inconsistency of Dr. Kalidas's opinions is his conclusion that Plaintiff has a marked limitation in activities of daily living despite his finding that Plaintiff is able to take care of herself, her personal hygiene and the usual activities of daily living. (T. 204, 207.)

11

Accordingly, the ALJ's conclusion that Plaintiff's impairment does not meet or equal Listing 12.06 is supported by substantial evidence and is therefore affirmed.

### C. Whether the ALJ's RFC Assessment is Unsupported by Substantial Evidence and is the Product of Legal Error

After carefully considering the matter, the Court answers this question in the affirmative, partly for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 14 at 14-16 [Pl .'s Mem. of Law].) The Court would only add the following analysis.

Plaintiff argues that the ALJ's RFC is assessment is not supported by substantial evidence because the ALJ assigned great weight to the opinions of Dr. Weber and Dr. Adams but failed to reflect their opinions regarding all of Plaintiff's limitations in his assessment. Plaintiff further argues the ALJ's RFC assessment is the product of legal error because he failed to follow the Psychiatric Review Technique.

Regarding her latter argument, Plaintiff contends that the ALJ erred by failing to follow the Psychiatric Review Technique because he did not address the four areas of functional limitation in the section of his decision regarding her RFC. The Court finds that this error is harmless, for the reasons stated in Defendant's memorandum of law, namely, that the ALJ reviewed all of the evidence in the record and specifically cited the findings of functional limitation, which Dr. Weber and Dr. Adams each recorded in their respective Psychiatric Review Technique forms. (T. 12.)

Regarding Plaintiff's argument that the ALJ failed to reflect all of the limitations opined by Dr. Weber and Dr. Adams in his RFC assessment, Plaintiff specifically argues that the ALJ failed to reconcile his finding that Plaintiff is capable of simple, routine repetitive tasks with up to three-step commands with the opinion of Dr. Adams that Plaintiff would be able to understand

12

and follow simple instructions and with Dr. Weber's opinion that she would be able to understand and follow simple instructions but would have difficulty with more detailed instructions.

To be sure, the record is devoid of any mention by the reviewing or treating sources that Plaintiff is capable of understanding and following three-step commands, and the ALJ fails to explain his assessment in this regard. The ALJ's decision must contain a sufficient explanation of his reasoning to permit the reviewing court to judge the adequacy of his conclusions. *See Raja v. Astrue*, 11–CV–3490, 2012 WL 1887131, at *5 (S.D.N.Y. May 23, 2012). An ALJ's failure to do so, as here, is error. Accordingly, remand is appropriate so that the ALJ may revisit his RFC assessment and address this omission.

### D. Whether the ALJ Erred in Failing to Properly Assess Plaintiff's and a Third Party's Credibility

After carefully considering the matter, the Court answers this question in the negative, partly for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 15-17 [Def .'s Mem. of Law].) The Court would only add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

Plaintiff argues that the ALJ erred in concluding that her statements and those of her friend, Brian Lynch, "are not credible to the extent they are inconsistent with" the ALJ's RFC assessment. To be sure, "[i]t is erroneous for an ALJ to find a [plaintiff's] statements not fully credible because those statements are inconsistent with the ALJ's own RFC finding." *Ubiles v. Astrue*, No. 11-CV-6340, 2012 WL 2572772, at *12 (W.D.N.Y. July 2, 2012).[4] Instead, the ALJ must consider "the entire case record, including the objective medical evidence, the individual's

---

[4] *See also Nelson v. Astrue*, No. 5:09-CV-00909, 2010 WL 3522304, at *6 (N.D.N.Y. Aug.12, 2010), report and recommendation adopted, 2010 WL 3522302 (N.D.N.Y. Sept.1, 2010); *Kennedy v. Astrue*, No. 3:09-CV-0670, 2010 WL 2771904, at *5 (N.D.N.Y. June 25, 2010), report and recommendation adopted, 2010 WL 2771895 (N.D.N.Y. July 12, 2010); *Smollins v. Astrue*, No. 11-CV-424, 2011 WL 3857123, at *10–11 (E.D.N.Y. Sept. 1, 2011); *Mantovani v. Astrue*, No. 09-CV-3957, 2011 WL 1304148, at *5 (E.D.N.Y. Mar.31, 2011).

own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *See* SSR 96–7p. However, it is clear to the Court that here, the ALJ considered Plaintiff's statements as well as the statements of Mr. Lynch in the context of the overall record, including the objective medical evidence, and found them only partially credible. Where, as here, the application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).

Plaintiff also argues that it was erroneous for the ALJ to rely on Plaintiff's failure to seek treatment due to her alleged lack of funds. Courts have observed that faulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a "questionable practice." *See, e.g., Day v. Astrue*, No. 07 CV 157, 2008 WL 63285, at *5 n.6 (E.D.N.Y. Jan. 3, 2008). Here, however, the ALJ mentioned Plaintiff's cessation of treatment in acknowledging that Plaintiff's anxiety symptoms seemed to be controlled by medication over the course of her treatment by Dr. Kalidas, but that Plaintiff testified that she stopped taking the medication due to pregnancy and that she stopped treating with Dr. Kalidas because he did not accept insurance. Moreover, where, as here, an ALJ's decision regarding a Plaintiff's credibility is based on a review of the entire record, including the objective medical evidence, any error caused by such consideration of the failure to pursue treatment is harmless. *See Schlichting v. Astrue*, No. 5:11-CV-302, 2012 WL 3997955, at *4 (N.D.N.Y. Sept. 11, 2012).

Accordingly, the ALJ's assessment of the credibility of the statements of Plaintiff and third-party, Brian Lynch, is affirmed.

E.  **Whether the ALJ's Step 5 Determination is Unsupported by Substantial Evidence and is the Product of Legal Error**

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 14 at 23-24 [Pl.'s Mem. of Law].) The Court would only add the following analysis.

As explained in Part IV.C. of this Decision and Order, the ALJ erred in failing to explain his RFC assessment in full because there is no evidence in the record to support, nor does the ALJ explain, his conclusion that Plaintiff retains the RFC to perform simple, routine repetitive tasks with up to three-step commands. Because the vocational expert relied on this RFC in rendering his opinion that there are jobs in the national economy that Plaintiff can perform, remand is also necessary so that, after reassessing Plaintiff's RFC, the ALJ may redetermine at step five of the sequential analysis whether there are jobs in the national economy that Plaintiff can perform.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: January 24, 2013
Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge